CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 2 0 2010

JULIA C. DUDLEY, CLERK
BY:
 DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LINDA WRIGHT-THOMPSON,<br>Plaintiff, | Civil Action No. 7:09cv00362 |
| v. | MEMORANDUM OPINION |
| JOHN E. POTTER,<br>Postmaster General,<br>United States Postal Service,<br>Defendant. | By: Samuel G. Wilson<br>United States District Judge |

This is an action brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (2006) ("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (2006) ("Title VII"), by Linda Thompson ("Thompson"), against her employer, the United States Postal Service ("USPS"). Thompson, who is a Caucasian female who was 40 at the relevant time, alleges that the USPS discriminated against her on account of her age, race, and gender when she was denied a transfer to a more desirable work schedule.[1] The USPS has moved for summary judgment on the ground that Thompson cannot establish a prima facie case of discrimination as to any of her claims, and that even if she can, her application was denied for legitimate, non-discriminatory reasons. The court finds that, while there is no evidence that the USPS discriminated against Thompson on account of her age or race, there is at least a question of fact as to whether the USPS's hiring rationale was a pretext for gender discrimination.

---

[1] The USPS (as well as the EEOC) has characterized Thompson's complaint as including a claim of disability discrimination as well as age, race, and gender. Even a liberal reading of Thompson's complaint, however, does not allow for such an interpretation. Whatever issues Thompson raised with the EEOC, her filings in this court are the only proper source from which to interpret her claims.

Accordingly the court will grant in part and deny in part the USPS's motion for summary judgment.

## I.

In the light most favorable to Thompson, the facts are as follows. Thompson has been employed by the USPS since 1989. During the entirety of that time, Thompson has battled Crohn's disease, symptoms of which have forced her to miss several weeks of work each year.[2] During her first few years of employment, Thompson primarily used her sick-leave to take time off when her illness flared up. Beginning in 1993, however, Thompson began taking time under the Family and Medical Leave Act ("FMLA"), which came into effect that year. At the time, Thompson was unaware of any FMLA-specific paperwork required by the USPS, and simply indicated her use of FMLA leave by writing "FMLA" on her usual sick-leave applications. In 1999, when Thompson moved to a new USPS location, she became aware of, and began submitting, official FMLA leave applications when she took time off due to her illness.

In January 2006, Thompson applied for a transfer to a more desirable work shift within the USPS, one that would allow her to work during the morning and early afternoon, as opposed to her current position working the evening and overnight hours. Twenty-two individuals, including Thompson, applied for the more desirable shift, and eleven were selected. The transfer decisions were made by Dennis Smith, the manager of the department that was hiring. The USPS claims that, pursuant to a collective bargaining agreement, Smith made the transfer decisions based on a formula that compared each applicants' history of work attendance and

---

[2] In her deposition, Thompson estimated that she had missed around 40 to 50 days each year during the past five years due to bouts with Crohn's disease.

2

safety records. To determine an applicant's attendance history, Smith first subtracted out all of the applicant's FMLA leave, and then divided the remaining sick-leave from the total possible sick-leave over the length of the applicant's employment with the USPS. Using this system, Smith determined the percentage of sick-leave each applicant had remaining, with a higher percentage indicating a better attendance history. Those percentages ranged from 0.8% to 84%. Smith calculated Thompson's remaining leave to be 1.18%, among the lowest of the applicants. USPS alleges that, based on this percentage, and the fact that Thompson had a recent accident which reflected negatively on her safety record, Smith denied her transfer request.

Of the eleven applicants whose transfer requests were granted, nine were male, and two were female. Ten of the applicants were Caucasian, and one was African-American. All but one of the successful applicants had no prior accident history, and all but one of them had a better attendance record than Thompson. The successful applicants ranged in age from 34 to 68, four were younger, and seven were older than Thompson, who was 40 at the time. The average sick-leave percentage of the successful applicants was 43%, with a high of 84%, and a low of 0.8%. The individual with only 0.8% sick-leave remaining was John James, a USPS employee since 1998. He was the only individual selected for the transfer with attendance statistics worse than Thompson's. According to Smith, James was originally not selected for the transfer because of his sick-leave percentage, but Smith then received recommendations for James from his previous supervisors. Smith has stated that it was only because of those recommendations that he granted James' transfer request.

Of the eleven individuals not selected for the position, nine were women, and two were men. Of the eleven, nine reported their race: eight were Caucasian, and one was African-

American. The unsuccessful applicants who reported their age ranged from 37 to 57, with five being younger, and four older than Thompson. Four of the applicants, including Thompson, had a prior accident, and all but two had a better attendance record than Thompson. The average sick-leave percentage of the unsuccessful applications was 19%, with a high of 64%, and a low of 1%. Eight of the unsuccessful applicants had a better attendance history than at least one of the successful applicants other than James. Three of the unsuccessful female applicants had an attendance history better than at least one of the male applicants who was selected for the transfer, and one of the women had a sick-leave percentage better than nine of the successful applicants.

In calculating Thompson's work attendance, Smith stated that Thompson's earliest recorded usage of FMLA leave was in 1999. He, therefore, gave her credit in his calculations only for FMLA leave taken after that date, and not for any taken during the previous six years. Smith also stated that, if Thompson wished to apply for another transfer in the future, she should improve her attendance record, as there were numerous other applicants with better records who also were denied the transfer, and who would have to be considered ahead of Thompson for any future openings.

Thompson's application for a transfer was denied in May of 2006. In June of 2006, she filed an informal complaint of discrimination with the EEOC, and subsequently filed a formal complaint in July of that year. The USPS issued a Report of Investigation into Thompson's allegations in October of 2006, and a Final Agency Decision in July 2007. The EEOC then affirmed that decision in March of 2009, and denied Thompson's request for reconsideration in

June 2009. Thompson filed this action on August 27, 2009, alleging age, race, and gender discrimination.[3]

## II.

The USPS has moved for summary judgment[4] on the ground that Thompson has not established a prima facie case of discrimination on any of her claims, and that even if she has, the USPS has proffered legitimate, non-discriminatory reasons for denying Thompson the transfer, and Thompson has failed to rebut those reasons with evidence that they are mere pretext. The court agrees with the USPS as to Thompson's ADEA and Title VII race discrimination claims,

---

[3] Thompson also states in her complaint that the USPS "used my FMLA against me." (Compl. 1.) This statement, combined with the accompanying factual allegations may be the basis for a claim that the USPS violated Thompson's FMLA rights, independent of the discrimination alleged here. It appears from the record that the USPS failed to credit Thompson for six years of FMLA leave, and instead, counted her leave during that period against her sick-leave balance. The percentage of Thompson's remaining non-FMLA sick-leave was used to make the transfer decision that is the basis of this suit. It is conceivable that, had those six years of leave been properly attributed to FMLA leave, Thompson's available sick-leave percentage would have been significantly better.

Thompson has not pled an FMLA violation, however, and the USPS has not had the opportunity to respond to such a claim. In any event, it is unlikely that Thompson would be able to sustain such a claim in this proceeding, because it likely would be time-barred. Violations of the FMLA are normally subject to a two-year statute of limitations, except in cases of a willful violation, which increases the period to three years. See 29 U.S.C. § 2617(c). Thompson's transfer request was denied on May 2, 2006, and she filed this suit on August 27, 2009, more than three years after the actions that gave rise to this litigation.

[4] Summary judgment is proper "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court views the evidence and makes all reasonable inferences in the light most favorable to the nonmoving party. Sempione v. Provident Bank of Md., 75 F.3d 951, 954 (4th Cir. 1996). "While courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 958-59 (4th Cir. 1996).

and will grant summary judgment on them. As to Thompson's Title VII gender discrimination claim, however, the USPS's own statistics undermine its explanation for denying Thompson's transfer request, and are suggestive of gender discrimination. Therefore, the court will deny USPS's motion as to that claim.

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000). "To establish a disparate-treatment claim under . . . the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2350 (2009). See also EEOC v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992) ("In order to establish a cause of action under the ADEA, a plaintiff must demonstrate that but for the employer's motive to discriminate against the plaintiff on the basis of age, the plaintiff would not have been discharged [or demoted]."). In contrast, "Title VII . . . explicitly authoriz[es] discrimination claims in which an improper consideration was [merely] 'a motivating factor' for an adverse employment decision." Gross, 129 S. Ct. at 2349 (citing 42 U.S.C. § 2000e-2(m) (providing that "an unlawful employment practice is established when the complaining party demonstrates that race, color religion, sex, or national origin was a *motivating factor* for any employment practice, even though other factors also motivated the practice") (emphasis added)). In either case, a plaintiff can make the required evidentiary showing by employing the McDonnell Douglas burden-shifting test. See Clay Printing, 955 F.2d at 940-41.

Under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination. To do so the plaintiff must allege that she was: (1) a member of a protected

6

class; (2) qualified for the job in question; (3) suffered an adverse employment action, and; (4) the existence of circumstances that give rise to an inference of unlawful discrimination. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). If the plaintiff can establish a prima facie case of discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its challenged action. See McDonell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Although a valid prima facie case creates a presumption of discrimination, "[t]he ultimate burden of persuading the trier of fact . . . remains at all times with the plaintiff." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981). If the employer satisfies its burden of production, then the presumption of discrimination established by the prima facie case disappears, and the employee must show that the employer's proffered reasons were merely a pretext for discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993); Rowe v. Marley Co., 233 F.3d 825, 829 (4th Cir. 2000) ("[P]roving a discrimination claim under [the ADEA] requires a showing that an employer's asserted non-discriminatory reason for the challenged employment action is actually a pretext."). To satisfy the pretext requirement, the employee must demonstrate that the adverse employment decision "was [actually] based upon [an improper factor] or that the reasons proffered by [defendants] were simply 'unworthy of credence.'" Clay Printing, 955 F.2d at 944 (citing Burdine, 450 U.S. at 256).

Applying these standards, it is clear that Thompson has failed to establish a prima facie case of either age or race discrimination. The court also finds, however, that there are sufficient

7

facts from which a jury could conclude that the USPS's explanation for its decision to deny Thompson a transfer was pretext for gender discrimination.

A.

Thompson has alleged that the USPS discriminated against her on account of her age because "a younger female . . . was . . . awarded a position." (Compl. 2.) Thompson could be referring to either of the two women who received the transfers. One woman was 32 at the time, and one was 36. Of the remaining successful transferees, however, all but two are older than Thompson, who was 40 at the time. In fact, the transfer was granted to three individuals who were 56, 58, and 67, and was denied to three applicants who were 38, and two who were 37. In short, even if Thompson satisfies the first three prongs of McDonnell Douglas, there is no evidence to suggest that age was a factor when the transfer decisions are considered as a whole. The circumstances simply do not give rise to an inference of age discrimination. Accordingly, Thompson has failed to establish a prima facie case of age discrimination, and the court will grant summary judgment on her ADEA claim.

B.

Thompson's Title VII claim for racial discrimination suffers a similar deficiency under the McDonell Douglas proof scheme. As with her ADEA claim, there is simply no evidence to support an inference that the USPS denied Caucasians transfers on account of their race. Of the twenty applicants whose racial identity is revealed in the record, eighteen, including Thompson, are Caucasian, and only two are African-American. Thompson asserts racial discrimination on the ground that one of the two African-American applicants was granted a transfer, and she was not. This fact alone, however, in no way suggests that race was a factor used by the USPS to

deny Thompson a transfer, especially when considering the circumstances as a whole. Under the fourth prong of McDonnell Douglas, therefore, the facts do not give rise to an inference of racial discrimination. Accordingly, Thompson has failed to establish a prima facie case of race discrimination, and the court will grant summary judgment on this claim.

C.

As with the other two claims, Thompson's Title VII gender discrimination claim is also subject to the McDonell Douglas proof scheme. In this instance, however, the facts may support a gender discrimination claim, and a jury could find the USPS's explanations to be a mere pretext for gender discrimination.

As an initial matter, Thompson has made a prima facie showing of gender discrimination under McDonell Douglas. Thompson is a member of a protected class under Title VII; there is nothing in the record to suggest that Thompson was not qualified for the position; Thompson suffered an adverse employment action in the form of the transfer denial, and; circumstances exist to support an inference of gender discrimination, namely, the evidence discloses that Thompson, and other females, were denied transfers which were granted to men with inferior sick-leave statistics. See Swierkiewicz 435 U.S. at 510; Spain v. Mecklenburg Cnty. Sch. Bd., 54 Fed.Appx. 129, 132-33 (4th Cir. 2002). Accordingly, the burden shifts to the USPS to articulate a legitimate, non-discriminatory reason for its challenged action. See McDonell Douglas, 411 U.S. at 802.

The USPS avers that it had a legitimate, non-discriminatory reason to deny Thompson the transfer, and to instead grant it to James, even though he had inferior statistics. Specifically, the USPS alleges that James was granted the position entirely because his previous supervisors

recommended the transfer. This explanation, however, relies on a myopic view of the facts, and fails to account for the overall gender disparity between the successful and unsuccessful applicants. Taken as a whole, the facts could very well support an inference of gender discrimination.

The USPS argues that, of the eleven successful transfer applicants, ten transfers were granted pursuant to the sick-leave and safety formula, and that James was the lone exception in which the formula did not determine the results. The USPS's own evidence, however, reveals otherwise.

Of the eleven successful applicants, nine were men, and two were women. Conversely, of the eleven unsuccessful applicants, nine were women, and only two were men. This fact would be easily dismissed as inconsequential if, as the USPS alleges, the hiring decisions were made formulaically, and the eleven successful applicants were simply those who had the best numbers. But even taking James out of the equation, the figures and the assertions do not align. Three of the unsuccessful female applicants had superior sick-leave percentages to at least one of the other successful male applicants, and two of those women had a clean accident history. One of those women, in fact, had superior numbers to six of the men who were granted transfers. Five unsuccessful female applicants had superior attendance numbers to both of the women who were granted the transfer, and, in total, seven of the nine unsuccessful female applicants had equal or better numbers than at least one of the successful applicants other than James.

In short, the evidence reveals that transfer decisions may have been made based on criteria not revealed to Thompson or presented to this court. Considering that fact, and the overall gender disparity between successful and unsuccessful applicants, a jury could conclude

that the USPS's assertion that, aside from James, the transfer decisions were made formulaically, lacks credibility. A jury also could find that gender was a motivating factor in the transfer decisions. See Gross, 129 S. Ct. at 2349. Therefore, even if the USPS has given a legitimate, non-discriminatory reason for denying Thompson the transfer, there is a factual question for the jury as to whether that reason is actually pretext for gender discrimination. Accordingly, the court will deny the USPS's motion for summary judgment on Thompson's claim of gender discrimination.

### III.

For the reasons stated, the court grants in part, and denies in part the USPS's motion for summary judgment.

**ENTER:** This 20th day of August, 2010.

United States District Judge